**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

FELICIA SCROGGINS                              CIVIL ACTION NO. 18-0201

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT                             MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 42) filed by Defendant, the City of Shreveport ("the City"). The City seeks dismissal of the Title VII racial discrimination, gender discrimination, and retaliation claims of Plaintiff, Felicia Scroggins ("Scroggins"). Scroggins opposed the Motion for Summary Judgment and the City replied. See Record Documents 48 and 53. Scroggins also filed a Notice of Supplemental Authority. See Record Document 55. For the reasons set forth below, the City's Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is an employment discrimination case. Scroggins, an African-American female, brings claims against the City for racial discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*. At all times relevant to the instant matter, Scroggins was employed as a firefighter, more specifically a Fire Engineer, with the Shreveport Fire Department ("SFD"). Her claims primarily arise out of her two unsuccessful bids in 2015 to become an Engineer at Station 22. She further alleges that other actions of the SFD, though not directly tied to the bidding process for a Station 22 position, were retaliation for her grievances concerning her previous bids.

Scroggins joined the SFD in May 2001.  She has held the rank of Fire Engineer since January 2013.[1]  On January 20, 2015, SFD announced that an Engineer position at Station 22, C shift, was open for bid.  Scroggins bid for the Station 22 position.  In her declaration, Scroggins explained that her desire to bid for a position at Station 22 was simple – it was a permanent position and not a swing position.  See Record Document 48-3 (Declaration of Felicia Scroggins) at 2.  She was looking for a permanent station. See id.  On or about February 2, 2015, the bid was awarded to Michael L. Hayes ("Hayes"), by then Acting Chief Ronald Jones.  Hayes, a white male, was a paramedic. See Record Document 1 at ¶ 7; see also Record Document 48-3 at ¶ 5.  The City submits that Hayes was selected because he was qualified to perform pre-plan reviews.  See Record Document 42-20.

On February 6, 2015, Scroggins initiated a grievance concerning the award of the Station 22 position to Hayes:

> I have attached a copy of the bid policy and it states that a paramedic can not bid a non-paramedic station unless all paramedics spots are filled on every shift.

Record Document 42-13 (SFD Employee Grievance Form).  Scroggins later explained in her Charge of Discrimination:

> I applied for a non-paramedic job opening, for which I was qualified. However, I was not awarded this position, and a paramedic was hired instead.  Fire Department Administrative Procedure 1.9B states that "No Driver or Firefighter Paramedic may bid a non-paramedic position unless all paramedic positions are filled for his/her rank on all shifts.

Record Document 42-17 (EEOC Form 5 Charge of Discrimination).  The SFD voided the grievance because proper procedures were not followed.  See Record Document 42-15

---

[1] While not relevant to this matter, Scroggins ceased employment with the SFD in January 2023.

(April 13, 2015 Inter-Office Memorandum City of Shreveport) at 1-2.  More specifically, Scroggins had not delivered a copy of the grievance to all involved parties on the same day.  See id.  Scroggins submits there was no such written policy in effect.  See Record Document 48-1 at ¶ 6.

Scroggins then filed a complaint with the City's Human Resources Department on the grounds that the decision to void her grievance was harassment and retaliation.  See Record Document 42-14 (City of Shreveport Human Resources Department Complaint Form); see also Record Document 42-15.  On April 13, 2015, the City's Human Resources Department concluded that the grievance was properly voided and rendered findings of no misconduct on the harassment and retaliation allegations.  See Record Document 42-15.

On August 5, 2015, an additional position on the C Shift at Station 22 was put out for bid.  Another position then became open for the B shift at Station 22 on September 1, 2015.  This position was also put out for bid.  It is undisputed that Station 22 is responsible for reviewing and proofreading all SFD pre-plans.  Generally, "'pre-plans' are situational awareness plans that SFD prepares for businesses in Shreveport that provide critical information for firefighters responding to fire emergencies there, such as potential hazards and locations of the nearest hydrants and utility cutoffs."  Record Document 42-3 (Sworn Declaration of Edwin Scott Wolverton, SFD Chief from February 2015 until December 2021) at ¶ 3.  In his sworn declaration, Chief Scott Wolverton ("Chief Wolverton") stated:

> After I became Chief in February 2015, I decided to implement a competency test on pre-plans for all SFD personnel bidding for as assignment at Station 22.  I did so to ensure that Station 22 would be staffed

by individuals that were the most knowledgeable on pre-plans, because they are vitally important to the SFD's mission and operations.

Id. at ¶ 4.  Chief Wolverton further stated that he instructed Deputy Chief Ronald Jones ("Deputy Chief Jones") that the bid was to be awarded to the applicant with the highest score and that, in the case of a tie score between two bidders, the tie was to be broken based on seniority.  See id. at ¶ 5.  Chief Wolverton explained that he did not instruct Deputy Chief Jones that the competency test was to have a minimum score or that it would be a "pass or fail" test.  Id. at ¶ 6.

On August 10, 2015, Deputy Chief Jones issued an Inter-Office Memorandum to all SFD personnel advising that all personnel – regardless of rank – bidding for a position at Station 22 would be required to complete a competency test to ensure they have the necessary skills for the assignment.  See Record Document 42-4.  This initial memorandum did not reflect that the bids should be awarded to the applicant with the highest score on the competency test or the procedure for a tie.  A clarifying memorandum was issued on September 23, 2015 setting forth this information.  See Record Document 42-5.  Scroggins contests that the policies regarding the highest score and the protocol for a tie were ever implemented.  See Record Document 48-1 at ¶ 13.  Moreover, she contends that the clarifying memorandum was not issued until September 29, 2015.[2]

The competency test was prepared by Henrietta Parker ("Parker"), a SFD information technology specialist who had been overseeing the pre-plan program for over

---

[2] According to Scroggins, September 29, 2015 was two days after she filed her complaint of discrimination and harassment.  See Record Document 48-1 at ¶ 13.  Scroggins maintains that "the policy, that previously stated that the bid would be awarded to the 'senior person passing the evaluation' was changed to state that 'the person who has the highest overall score' gets the bid."  Record Document 48-3 at ¶ 21.  She further argues that the new policy was falsely dated September 23, 2015 when in fact it was not implemented until September 29, 2015, two days after her grievance.  See id.

ten years.  See Record Document 42-3 at ¶ 7.  The questions on the test were pulled from SFD Administrative Policy #19, which governs the pre-plan program.  See id.  It is uncontested that SFD Administrative Policy #19 was accessible to all SFD personnel.

Five applicants bid on the two Station 22 positions.  See id. at ¶ 11.  The City contends that all bidders were given an opportunity to rotate at Station 22 for three shifts prior to taking the competency test.  See id.  Scroggins submits that she was permitted to work three shifts at Station 22 prior to the competency test, but only after initially being denied such request and filing a grievance.  See Record Document 48-3 at ¶18.  The City maintains that Scroggins worked four shifts at Station 22 prior to the competency test and also went to "Parker in July to work on preplans."  See Record Document 42-24 at 3.

The competency test was administered between September 10-16, 2015.  See Record Documents 42-3 at ¶ 11 and 42-6 at 2.  The bids were not awarded before all tests were taken.  See Record Document 42-6 at 2.  Scroggins admits that she "chose not to even begin the test."  Record Document 48-3 at ¶ 19.  On September 18, 2015, the SFD announced that both of the Station 22 positions had been filled.  See Record Document 42-19.  Fire Engineer Charles "Bo" Deaton ("Deaton") was selected for the B shift and Fire Engineer Chris Standridge ("Standridge") was selected for the C shift.  See id.  It is undisputed that both Deaton and Standridge are white males.  According to Chief Wolverton, "the Station 22 assignments were . . . awarded to the two bidders who had the highest scores" on the competency test.  Record Document 42-3 at ¶ 12.  Scroggins submits that Deaton and Standridge "sat and started the test, but neither of [them] completed or passed the same."  Record Document 48-3 at ¶ 19.  She contends that the highest overall score on the test was 38%.  See id.

On September 27, 2015, Scroggins submitted a grievance concerning her second bid for a Station 22 position:

> I have a concern with the awarding of the bids at Station 22. The bids were effective 9/11/2015. Before everyone had taken the test. All three people bid on the C-shift position and it was given to the person with the lowest seniority. We were not properly trained by the same person on the testing material. This was a subjective test. . . . [T]he Shreveport Fire Dept. has to be held accountable for it's [sic] actions in harassment, retaliation and discrimination.

Record Document 42-21 (SFD Employee Grievance Form). On October 14, 2015, Chief Wolverton responded to Scroggins' grievance and closed the grievance, stating that "the awarding of the Station #22 Engineer's position will remain as it is and the competency test will continue to be a part of the selection process for all ranks submitting bids at Station #22 in the future." Record Document 42-6 at 2. The response also specified:

> The test had 100 possible points and was graded by Chief of Safety and Special Operations Skip Pinkston. It was not a pass or fail test. The bid was awarded to the individual who showed the most knowledge and competency in Pre-plans by making the highest score out of the possible 100 points. The test was designed to ensure we had the most competent and knowledgeable person assigned to the station to ensure pre-plans were being submitted correctly. There is no board certification for this test. This is an SFD competency test.
>
> . . .
>
> The test was not subjective. . . . [I]t was developed from the Administrative Procedure for Pre-Plans. . . . In reference to your having no training: . . . By your own accord and initiative you met with Ms. Parker on Thursday, July 16, 2015 from 1400 to 1530 hours to review actions taken by her office with managing preplan inspection activities.
>
> . . .
>
> The bids were not awarded before all tests were taken. Five candidates qualified by submitting bids . . . . All candidates were tested prior to awarding the bids and tested or had the opportunity to test between September 10-16, 2015.

. . .

In addition, you disqualified yourself by your own decision to not complete the competency testing process.

Id. at 1-2.

Scroggins then filed a complaint with the City's Human Resources Department on the grounds that the process of bidding at Station 22 was harassment, retaliation, and because of her race and gender. See Record Document 42-23 (City of Shreveport Human Resources Department Complaint Form). On November 3, 2015, the City's Human Resources Department rendered a finding of no misconduct under the definition of harassment, retaliation and discrimination. See Record Document 42-24.

Scroggins appealed to the Shreveport Municipal Fire and Police Civil Service Board ("the Board"). See Record Document 42-29 (Transcript of December 9, 2015 Proceedings held before the Shreveport Municipal Fire and Police Civil Service Board). A motion to vacate the bid award process for the Station 22 positions, implement a minimum score for the competency test, and start the bidding process over failed. See id. at 240-242. The Board did recommend that the SFD set a minimum passing score for the competency test moving forward. See id. at 213-238. Scroggins then appealed to the First Judicial District Court, but the district court denied her appeal. See Record Document 42-30 (January 14, 2019 Judgment).

On July 24, 2015, Scroggins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding her first bid for a Station 22 position. See Record Document 42-17. She alleged discrimination based on her race and sex and retaliation. See id. While the EEOC charge was initially limited to the first

bid process, Scroggins later amended her Charge of Discrimination on October 5, 2015 to include the second bidding process.  See Record Document 42-22.

Scroggins alleges that following her charge of discrimination with the EEOC, she experienced further retaliation.  See Record Document 1 at ¶ 28.  She identified three purported retaliatory actions.  See id. at ¶¶ 29-37.  First, on November 10, 2015, Scroggins received a letter of reprimand from the SFD concerning an incident at the Bradford Skilled Nursing Facility that occurred on September 18, 2015.  See Record Document 42-27 (Letter of Reprimand).  Scroggins does not dispute that she received the Letter of Reprimand.  However, she explained that she appealed the reprimand to the Board; her appeal was granted; and the Letter of Reprimand was to be removed from her record.  See Record Document 48-3 at ¶ 28.

Next, in March 2016, Scroggins was "compelled" to undergo a fit for duty evaluation with Dr. Mark Vigen ("Dr. Vigen").  See id. at ¶ 29; see also Record Document 42-9 at 3.  The City maintains that Chief Wolverton directed Scroggins to undergo the evaluation because she had taken sick leave for stress, all in accordance with SFD Administrative Policy.  See Record Document 42-3 at ¶¶ 15-16; see also Record Document 42-7 (Fire Department Administrative Procedure).  Scroggins submits that she at all times complied with the SFD's sick leave and applicable leave policies.  See Record Document 48-1 at ¶¶ 33-34.  On May 26, 2016, Scroggins was cleared by Dr. Vigen to return to work immediately.  See Record Document 42-8.

On July 30, 2017, Scroggins backed a fire engine she was driving into a fence. See Record Document 42-28 (SFD Supervisory Action Report).  After the incident, the SFD issued her a written directive for corrective action advising her to follow the Standard

Operating Procedures for such operations more closely going forward.  See id.  Scroggins does not contest that she was issued a written directive.  Yet, she maintains that such discipline is immaterial to decide the issues presented in the instant motion.  See Record Document 48-1 at ¶ 35.

On November 21, 2017, the EEOC issued a dismissal and right-to-sue letter, finding that it was "unable to conclude that the information obtained establishes violations of the statutes."  Record Document 42-26.  Scroggins filed the instant lawsuit in February 2018. See Record Document 1.  The City has now moved for summary judgment seeking dismissal of Scroggins' Title VII racial discrimination, gender discrimination, and retaliation claims.  See Record Document 42.  The City argues Scroggins cannot make out a *prima facie* case of discrimination or retaliation.  See id.  Additionally, it contends she cannot establish that the City's non-discriminatory reasons for awarding the Station 22 positions to other bidders were pretextual.  See id.  Scroggins opposed the Motion for Summary Judgment, submitting resolution of her claims necessarily entails the assessment of credibility – which is not to be considered in a summary judgment determination – and that genuine issues of fact exist as to whether the facts of this case are sufficient to support claims under Title VII. See Record Document 48.

**LAW AND ANALYSIS**

I.    **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "A genuine issue of material fact exists when

9

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). "Summary judgment is proper 'where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact.'" Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir. 1990) (quoting Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir.1988)).

If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## II.    Title VII Racial and Gender Discrimination Standard.

If a plaintiff has exhausted her administrative remedies, then she may prove a claim of intentional discrimination either by direct or circumstantial evidence. Courts analyze cases built on circumstantial evidence, like this one, under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under the applicable burden-shifting paradigm for Title VII race and gender discrimination

claims, the plaintiff must establish a *prima facie* case of discrimination by showing that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by* Hamilton v. Dallas Cnty, 79 F.4th 494 (5th Cir. 2023) (en banc).  In the context of a failure to transfer claim, courts have modified the fourth element to require "someone outside of the protected class was hired into the position."  Smith v. Alabama Dep't of Corr., 145 F. Supp. 2d 1291, 1297 (M.D. Ala. 2001), *citing* Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 828 (11th Cir.2000).[3]  If the plaintiff succeeds in making this *prima facie* showing, then the burden "shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action."  McCoy, 492 F.3d at 557.  This "burden is only one of production, not persuasion, and involves no credibility assessment."  Id.  If the employer sustains this burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose."  In order to meet this burden, the plaintiff is required to rebut each nondiscriminatory reason set forth by the employer.  See id.

---

[3] As will be discussed *infra*, the City submits that the fourth element of the *prima facie* case requires Scroggins to show that others similarly situated were treated more favorably.  See Record Document 42-2 at 14, 17-18.  However, this Court believes the appropriate inquiry for the fourth *prima facie* element in a failure to transfer case is whether someone outside of the protected class was hired into the position.  See Loyd v. City of Ruston, Louisiana, No. 3:22-CV-05809, 2023 WL 4771203, at *4 (W.D. La. July 26, 2023) (in a Title VII case alleging gender discrimination as the basis for the denial of a transfer, the court stated that the plaintiff must prove that she was replaced by a male as the fourth element of her *prima facie* case).

### III.    Title VII Retaliation Standard.

"To establish a *prima facie* case of retaliation, the plaintiff must establish: (1) she participated in an activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action." Sansone v. Jazz Casino Co., LLC, No. 20-30640, 2021 WL 3919249, at *2 (5th Cir. Sept. 1, 2021). If the plaintiff successfully makes this showing, then the burden "shifts to the employer to articulate a legitimate, nonretaliatory reason for its employment action." Id. "If a lawful reason is produced, the burden shifts back to the plaintiff to demonstrate the proffered reason is a pretext for the real retaliatory purpose." Id.

Retaliation claims must be proven according to traditional principles of but-for causation. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). Yet, this but-for standard does not apply at the *prima facie* case stage. See Garcia v. Prof'l Cont. Servs., Inc., 938 F.3d 236, 242 (5th Cir. 2019). At the *prima facie* case stage, causation can be established "by showing close enough timing between [the] protected activity and [the] adverse employment action." Id. at 243.

### IV.    Analysis.

The City argues that Scroggins has not made and cannot make a *prima face* showing of discrimination or retaliation under Title VII. Additionally, it contends she cannot overcome the City's legitimate, non-discriminatory reasons for taking the actions it did. The Court will begin with Scroggins' racial and gender discrimination claim.

A.    **Racial and Gender Discrimination.**

1.    Prima Facie Case

Elements one and two of Scroggins' *prima facie* case are not in dispute.  As to elements three and four, the City argues Scroggins cannot establish a *prima facie* case of discrimination because (1) a failure to transfer is not an adverse employment action and (2) she cannot demonstrate that a similarly situated employee was treated more favorably.  See Record Document 42-2 at 14-18; Record Document 52 at 6-9.

The City submits that the failure to transfer is not an adverse employment action.  According to the City, the lateral transfer in this case would have resulted in no change to Scroggins' title, duties, responsibilities, benefits, or pay.  Additionally, the City maintains that absent some objective evidence, Scroggins cannot make a *prima facie* showing based solely on her subjective belief that a Station 22 position is better.

The Court must begin its analysis of element 3 with the Fifth Circuit's en banc decision in Hamilton, 79 F.4th 494.  Previously, the Fifth Circuit required a plaintiff alleging an adverse employment action to establish an ultimate employment decision.  In Hamilton, the Fifth Circuit held that the "ultimate employment decision" language had no basis in Title VII.  Id. at 497.  Hamilton made clear that Title VII requires a broader reading than the "ultimate employment decision" line of cases permitted and thus "end[ed] that interpretative incongruity" by removing the requirement.  Harrison v. Brookhaven School District, 82 F.4th 427 (5th Cir. 2023), citing Hamilton, 79 F.4th at 497.  The Hamilton court explained:

> To adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an "ultimate employment decision." Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing,

13

> compensation, or the "terms, conditions, or privileges of employment"—just
> as the statute says.

Id. at 506.  Simply put, Hamilton rejected the "ultimate-employment-decision test" in favor of a less restrictive standard.  Burchfield v. S. Louisiana Med. Assocs., No. CV 23-1501, 2023 WL 5952183, at *4 (E.D. La. Sept. 13, 2023).  "Although the criteria for an adverse employment action are broad, the Fifth Circuit noted that Title VII does not permit liability for de minimis workplace trifles."  Id.

Prior to the Fifth Circuit's Hamilton opinion, district courts within the Fifth Circuit had recognized that even "a transfer denial may be parallel to a promotion denial even if the sought-after position did not involve an increase in compensation or other tangible benefits."  Loyd, 2023 WL 4771203, at *4.  If the sought after position was objectively better, then the refusal to transfer could amount to an adverse employment action.  See id.  Factors to consider in making the determination of whether the position was objectively better include "whether the position includes a pay increase or other tangible benefits; provides greater responsibility or better job duties; includes career-advancing possibilities; requires greater skill, education, or experience; is acquired through a complex competitive process; or is objectively more prestigious."  Id.  The examination is objective; thus, "the employee's subjective impressions as to the desirability of the new position" and "the employee's idiosyncratic reasons for preferring the new position" are not relevant.  Id.

Here, Scroggins alleges that the transfer denial affected the terms, conditions, or privileges of her employment.  She further stated that the Station 22 position was permanent as compared to a swing position.  Moreover, it is undisputed that Station 22 was responsible for reviewing and proofreading all SFD pre-plans.  Chief Wolverton

14

implemented a competency test on pre-plans for all SFD personnel bidding for as assignment at Station 22.  He explained that this was to ensure that Station 22 would be staffed by individuals that were the most knowledgeable on pre-plans, because they are vitally important to the SFD's mission and operations.  This staffing method indicates a greater responsibility, greater skill needed, and a competitive process for Station 22 positions.  Based on the foregoing facts and in light of the new guidance provided by Hamilton, this Court finds that Scroggins has – at a minimum – established genuine issues of material fact as to whether she suffered an adverse employment action.  Therefore, for purposes of the instant Memorandum Ruling, the Court will assume she suffered adverse employment actions during the two bidding processes.

Next, the City contends that summary judgment in its favor is appropriate because Scroggins cannot show that she was treated less favorably than other similarly situated employees outside the protected group.  As noted *supra*, the City maintains that the fourth element of the *prima facie* case requires Scroggins to show that others similarly situated were treated more favorably.  See Record Document 42-2 at 14, 17-18.  Scroggins submits she must only show she "was replaced by someone outside of the protected class."  Record Document 48-2 at 18.  Here, this Court believes the appropriate inquiry for the fourth *prima facie* element in a failure to transfer case is whether someone outside of the protected class was hired into the position.  See Smith, 145 F. Supp. 2d at 1297; Hinson, 231 F.3d at 828; Loyd, 2023 WL 4771203, at *4.  Because there is no dispute that Hayes, Deaton, and Standridge are all white males, Scroggins has met the fourth element of her *prima facie* case.  Thus, the Court must move to consideration of the City's legitimate, nondiscriminatory reasons for its actions.

2.    Legitimate, Nondiscriminatory Reason

Because Scroggins has successfully made her *prima facie* showing of discrimination, the burden shifts to the City to articulate legitimate, nondiscriminatory reasons for its employment actions.  See McCoy, 492 F.3d at 557.  Again, this "burden is only one of production, not persuasion, and involves no credibility assessment."  Id.

As to Scroggins' first bid, the City explained:

> The [City] contends that in filling some positions within the Fire Department, decisions are sometimes made based on the needs of the department in order to better serve the public. At the station where this particular position was open, the station itself has an extra special function that the personnel that work there provide. That function includes assisting the IT Specialist with the enormous amount of preplans that the department has to maintain in order to prepare the department for things that may present a hazard to the performance of firefighting and/or lifesaving efforts. The City further contends that the individual awarded the position had all of the qualifications needed to assist the department in carrying out the department's mission of providing the best quality of services and safety to department personnel and the citizens of the City of Shreveport.

Record Document 42-20 at 2.  As to the Scroggins' second bid, the City proffered that she disqualified herself by her own decision to not complete the competency testing process.  See Record Document 42-6 at 2.  Thus, the Court finds that the City has met its burden of production at the summary judgment stage.

3.    Pretext

Because the City has sustained its burden to offer legitimate, nondiscriminatory reasons for its actions, Scroggins now bears the ultimate burden of proving that the City's proffered reasons were not true but instead were a pretext for the real discriminatory purpose.  Scroggins must rebut each nondiscriminatory reason set forth by the City.

Scroggins argues that the City's proffered reasons "can be shown to be false." Record Document 48-2 at 27.  As to the first bid, Scroggins maintains that she was fully

16

able to perform the job and could have met the needs of the SFD.  See id. at 28.  She submits that Hayes had no greater experience than her and that by selecting him, the City ignored and violated its own internal policy regarding paramedic assignments.  See id.  In her declaration, Scroggins states:

> On or about February 2, 2015, the Station 22 bid was awarded by Acting Chief Ronald Jones to Michael L. Hayes, a white, male, who was a paramedic.  See Ex. B-3, attached to Defendant's Statement of Uncontested Facts.  At the time of the bid, Defendant's policy Section 1.9B provided that "No driver or Firefighter Paramedic may bid a non-paramedic position unless all paramedic positions are filled for his/her rank on all shifts."  Id.  See also Ex B-8 at FS1048, attached to Defendant's Statement of Uncontested Facts.  At the time of the bid, two paramedic spots were open.

Record Document 48-3 at 3.  Generally, "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent."  Johnson v. Johnson, 923 F. Supp. 2d 984, 996 (S.D. Tex. 2013), citing Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir.1995).  But, as argued by Scroggins, if it is undisputed that internal policies were not followed, a genuine issue of fact may exist.  But here, Scroggins has not presented competent summary judgment evidence demonstrating that an internal SFD policy was violated.  She refers to defense exhibits B-3 and B-8 in support of her contention that SFD internal policy was violated by the selection of Hayes.  Exhibit B-3 is a SFD Inter-Office Memorandum announcing bids, assignments, retirements and promotions.  See Record Document 42-12.  Exhibit B-8 is Scroggins' EEOC Charge of Discrimination.  Neither of these exhibits set forth Section 1.9B or demonstrate that at the time of the first bid, two paramedic spots were open.  Scroggins has attached a "DRAFT" of SFD "Personnel Assignment Procedures" to her opposition, yet this draft is unauthenticated.  Additionally, in the draft, Section 1.9C has a

line drawn through it, seemingly indicating it may have been stricken.[4]  At this stage, it is for Scroggins, not this Court, to identify the significance and meaning of her proffered exhibits.  See Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) & United States v. del Carpio Frescas, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) ("Judges are not like pigs, hunting for truffles buried in the record.").

Additionally, Scroggins has offered an audio recording and transcript of a purported conversation between her and SFD Captain Michael Fredieu.  See Record Documents 48-5 (Transcript) & 49 (Manual Attachment).  Scroggins submits that the recorded conversation shows that the City's stated reasons for giving the assignment to Hayes were pretextual.  The recording seems to capture workplace gossip between Scroggins and other SFD employees.  Yet, the recording and transcript are not competent summary judgment evidence.  Neither the recording nor the transcript have been properly authenticated under Federal Rule of Evidence 901.[5]  Scroggins has not provided the Court with information regarding how the recording was made, its chain of custody, who made the transcription, and the accuracy of the transcription.  The statements on the recording are also hearsay and Scroggins has not offered any hearsay exception.

---

[4] Section 1.9C states "no Driver or Firefighter Paramedic may bid a non-paramedic position unless all paramedic positions are filled for his/her rank on all shifts.

    1.     If at all possible Paramedics will be assigned to fill any vacant paramedic position.

    2.     The Assistant Chief (or designee) in conjunction with the EMS Supervisor will manage these  situations as deemed necessary and place personnel where necessary to provide the best possible coverage to the citizens of Shreveport."

Record Document 48-8 at 9.  Again, in the draft submitted by Scroggins, these provisions have a line through them.

[5] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.

Therefore, summary judgment in favor of the City is appropriate as to Scroggins' discrimination claim relating to the first bid process.

As to her second bid, Scroggins asserts that the City modified the qualifications for the position at Station 22 by instituting a competency test. She submits that genuine issues of fact exist as to the mandatory nature of the competency test and summary judgment should be precluded. <u>See</u> Record Document 48-2 at 28. More specifically, she submits:

> The reasoned proffered for the denial of Scroggins' bid was the failure to pass a purported test. However, . . . never before had a test been required, and, even then, no applicant completed or passed the alleged test. Subsequent to this result, Defendant manipulated the job requirements to allow a white, male . . . who did not complete and actually failed his test to be awarded the Station 22 bid.

<u>Id.</u>

The Court finds that the City's reason for not selecting Scroggins during the second bid process was not a pretextual cover for discriminatory motive. Scroggins admitted that she chose not to even begin the competency test. <u>See</u> Record Documents 42-9 at 3 and 48-3 at ¶ 19. She was given the same opportunity to rotate in at Station 22 before the competency test and she had the same ability as the other applicants to take the competency test. Scroggins has not presented competent summary judgment evidence to rebut that the City's decision not to select her during the second bid process resulted from her refusal to even begin the competency test required for the position. <u>See</u> <u>Taylor v. Cooper Tire & Rubber Co.</u>, 254 F. App'x 364, 366 (5th Cir. 2007).[6] Scroggins' claims

---

[6] While not advanced by the City, the Court notes that it could be argued that Scroggins was not qualified for the position at issue in relation to the second bid selection process because she did not even begin the competency test. Pursuant to this rationale, Scroggins would not have been able to establish a *prima facie* case of discrimination. <u>See</u> <u>Mitchell v. U T L X Mfg., L.L.C.</u>, 569 F. App'x 228, 230 (5th Cir. 2014).

that no other employee completed the test, that no test was actually given, and/or that the SFD created the competency test as a rouse to deny her a bid are self-serving, conclusory, and vague.   These claims do not create fact issues sufficient to defeat summary judgment.  See Guzman v. Allstate Assurance Co., 18 F.4th 157, 160–61 (5th Cir. 2021) (noting that while self-serving affidavits "may create fact issues," they cannot do so if they are "conclusory" or "vague").   Thus, summary judgment in favor of the City is also appropriate as to Scroggins' discrimination claim relating to the second bid process.

        B.    **Retaliation.**

        1.    Prima Facie Case

To prove her *prima facie* case of retaliation, Scroggins must establish:  "(1) she participated in an activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action."   Sansone, No. 20-30640, 2021 WL 3919249, at *2 (5th Cir. Sept. 1, 2021).   Element one is not in dispute, as Scroggins engaged in protected activity by making charges of racial and gender discrimination.  As to element two, the standard for an adverse employment action in the context of a retaliation claim "is lower [than Title VII discrimination claims]."   Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006).   For retaliation claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."   Id.  With this standard in mind, the Court will assume for purposes of the instant Memorandum Ruling that the 2015 letter of

reprimand, the 2016 requirement of a fit for duty evaluation, and the 2017 written directive for corrective action were adverse employment actions for purposes of retaliation claims. Thus, the Court will move to element three, that is, whether a causal connection exists between the protected activities and the adverse employment actions.

The third element requires only that Scroggins demonstrate a causal connection between her making charges of racial and gender discrimination and the three adverse actions she has identified.[7]  To establish a causal connection, the protected activity and the adverse employment action must have very close temporal proximity.  See Newbury v. City of Windcrest, 991 F.3d 672, 679 (5th Cir. 2021).  The Fifth Circuit has held that even two and one-half months is not within the bounds of the very close temporal proximity requirement. See Besser v. Texas General Land Office, 834 F. App'x 876, 884–85 (5th Cir. 2020) (per curiam).  Here, Scroggins filed her EEOC Charge of Discrimination on July 24, 2015 and amended her Charge of Discrimination on October 5, 2015.  There was approximately 5 months between the amended Charge of Discrimination and the March 2016 requirement of a fit for duty evaluation and approximately 9 months between the amended Charge of Discrimination and the July 2017 written directive for corrective action.  Thus, this Court finds that the March 2016 requirement of a fit for duty evaluation and the July 2017 written directive for corrective action do not meet the very close temporal proximity requirement.  Scroggins has not proven her *prima facie* case of retaliation as to these two adverse employment actions.  Because there is only a little over a month between the amended Charge of Discrimination on October 5, 2015 and

---

[7] Ultimately, the plaintiff must demonstrate but-for causation at the pretext stage.  See Garcia, 938 F.3d at 241.

the November 10, 2015 letter of reprimand, the Court finds Scroggins has met her *prima facie* case of retaliation as to this adverse employment action.

      2.    <u>Legitimate, Nonretaliatory Reason</u>

The City has produced the Letter of Reprimand and supporting documentation surrounding the September 18, 2015 incident at the Bradford Skilled Nursing Facility. <u>See</u> Record Document 42-27. The City's articulated legitimate, nonretaliatory reason for the Letter of Reprimand was sustained violations of SFD Rules and Regulations and Louisiana law, all after a pre-disciplinary conference. <u>See id.</u> The violations included:

**SFD Rules and Regulations, Article XVI – General Rules #2**

(F) Refrain from committing any act which might bring discredit upon the Department or its members. (H) Refrain from indulging in boisterous conduct or violent, abusive, or profane language.

**Louisiana Revised Statutes 33:2500.A:**

(3) The commission or omission of any act to the prejudice of the department service or contrary to the public interest or policy[.]

(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful or immoral conduct.

(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.

<u>Id.</u> at 2. Thus, the City has satisfied its burden of production as to a legitimate, nonretaliatory reason for the Letter of Reprimand.

      3.    <u>Pretext</u>

The Court must now consider whether Scroggins has rebutted the legitimate, nonretaliatory reason produced by the City. The pretext inquiry for retaliation "requires a greater showing than mere causal connection." <u>Owens v. Circassia Pharms., Inc.</u>, 33

F.4th 814, 835 (5th Cir. 2022).  Scroggins must "show that protected conduct was *the* reason for the adverse action."  Id.  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  Nassar, 570 U.S. at 352, 133 S. Ct. at 2528.  "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's [adverse action], no liability for unlawful retaliation arises if the employee would have been [subjected to the adverse action] even in the absence of the protected conduct."  Owens, 33 F4th at 835.  Notwithstanding, a plaintiff "may combine suspicious timing with other significant evidence of pretext to survive summary judgment."  Id.

In her opposition, Scroggins' arguments as to pretext seem to focus on her discrimination claims in relation to the bidding process.  See Record Document 48-2 at 27-29.  Generally, Scroggins submits that the City's "story is simply not credible."  Id. at 27.[8]  More specifically, in the context of the Letter of Reprimand, Scroggins states in her sworn declaration that she appealed the reprimand to the Board, won her appeal, and the City was ordered to remove the Letter of Reprimand from her record.  See Record Document 48-3 at 10.  Yet, she has not produced any competent summary judgment evidence to support her contention that the Board ordered the City to remove the Letter of Reprimand from her personnel file.[9]  Scroggins' self-serving declaration, without more, is simply not the type of "significant evidence of pretext" required to survive summary

---

[8]  The City explained that the investigation into the September 2015 incident began with "a formal complaint generated from the Bradford Skilled Nursing Facility administration office."  Record Document 42-27 at 1. Thus, the City maintains that the Letter of Reprimand, which Scroggins claims to be retaliation, was issued by the SFD in response to a discrete incident having nothing to do with the Station 22 bidding process or protected activity.  See Record Document 42-2 at 21.  The City also submits that the Letter of Reprimand was indisputably authorized by the SFD's administrative procedures and the action would have been applied to Scroggins regardless of whether she engaged in protected activity.  See id.

[9]  In contrast, the summary judgment record contains the transcript of Scroggins' appeal to the Board in relation to her second bid for a Station 22 assignment/position.  See Record Document 42-29.

23

judgment.  <u>Owens</u>, 33 F4th at 835; <u>see also</u> <u>Clark v. Am.'s Favorite Chicken Co.</u>, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported . . . affidavits or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); <u>Three Legged Monkey, L.P. v. City of El Paso, Texas</u>, No. CV-00260-FM, 2015 WL 12916324, at *3 (W.D. Tex. Aug. 10, 2015) ("A self-serving affidavit, without more evidence, will not defeat summary judgment.").  Scroggins' retaliation claims fail because she has not carried her ultimate burden to show that the City's proffered reason is a pretext for retaliation, that is, her protected activity was the but for cause of the Letter of Reprimand.  Thus, summary judgment in favor of the City is appropriate as to all of Scroggins' retaliation claims.

## CONCLUSION

Scroggins has not satisfied her burden pursuant to the <u>McDonnell Douglas</u> burden-shifting paradigm for her Title VII gender discrimination, race discrimination, or retaliation claims.  Accordingly, the City's Motion for Summary Judgment (Record Document 42) is **GRANTED** and all of Scroggins' claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith and the Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 13th day of November, 2024.

_____
United States District Judge